UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:22-CV-00405-CRS-RSE

**DEBORA C.**                                                                                                   **PLAINTIFF**

**VS.**

**KILOLO KIJAKAZI,**
*Acting Commissioner of Social Security*                                                       **DEFENDANT**

## REPORT AND RECOMMENDATION

The Commissioner of Social Security denied Debora C.'s[1] ("Claimant's") applications for disability and disability insurance benefits. Claimant now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). (DN 1). Both parties have filed Fact/Law Summaries. (DN 13; DN 20). The District Judge has referred the matter to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (DN 12).

I. Background

Claimant Debora C. is fifty-two years old, lives with her husband, and has an associate degree. (Tr. 91, 357). Claimant was previously employed in an administrative role for the United Parcel Service. (Tr. 256–57). Claimant filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, alleging disability beginning on October 24, 2019.[2] (Tr. 20). Claimant stopped full-time work in 2015 and completely stopped working in 2016,

---

[1] Pursuant to the Western District of Kentucky's General Order No. 22-05, any non-government party in a 42 U.S.C. 405(g) case will be identified and referenced solely by first name and last initial in opinions issued.
[2] Claimant previously filed a similar disability claim and received an unfavorable decision. (Tr. 74–84). However, due to "new and material evidence," Administrative Law Judge Karen Jackson determined it was appropriate to rehear the evidence. (Tr. 20 (citing *Drummond v. Comm'r Soc. Sec.*, 126 F.3d 837 (6th. Cir. 1997); *Denard v. Sec'y of H.H.S.*, 907 F.2d 598 (6th Cir. 1990))).

allegedly due to her disabling condition. (Tr. 607). Specifically, she bases her claim for disability on depression, anxiety, fibromyalgia, dysfunction in major joints, spine disorders, and epilepsy. (Tr. 77).

The Social Security Administration ("SSA") originally denied Claimant's application on August 13, 2020 (Tr. 74), and upon reconsideration on December 28, 2020 (Tr. 74). At Claimant's request, Administrative Law Judge Karen Jackson ("ALJ Jackson") conducted a video hearing on May 21, 2021. (Tr. 40–70). ALJ Jackson issued an unfavorable decision on July 29, 2021. (Tr. 20–34).

ALJ Jackson applied the traditional five-step sequential analysis promulgated by the Commissioner for evaluating a disability claim, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Claimant has not engaged in substantial gainful activity since the application date on September 30, 2019. (Tr. 21). Second, Claimant suffers from the following severe impairments: fibromyalgia; dysfunction-major joints; spine disorders; epilepsy; obesity; bilateral rotator cuff tears; depressive, bipolar, and related disorders; anxiety; and obsessive-compulsive disorders. (Tr. 23). Third, Claimant's conditions do not meet or medically equal the severity of a listed impairment from 20 C.F.R. § 404, Subpt. P, App'x 1. (Tr. 23–25). Additionally, Claimant has the residual functional capacity ("RFC") to perform "light work" with the following limitations:

> can occasionally lift or carry 20 pounds; frequently lift or carry 10 pounds; sit for 6 hours in an 8-hour workday with normal breaks; stand or walk for 6 hours in an 8-hour workday with normal breaks; push or pull equal to the claimant's lift and carry amounts; occasionally overhead reaching with bilateral upper extremities; never ladders, ropes or scaffolds; only frequently climb ramps and stairs; only frequently stoop, kneel, crouch, and crawl; should avoid concentrated exposure to vibration; should avoid all exposure to hazards such as the use of moving machinery and to unprotected heights; work is limited to simple repetitive routine tasks

> performed in a work environment free of fast paced production requirements involving only occasional work-related decisions and with only occasional work place changes; claimant should have only occasional interaction with the general public, occasional interaction with co-workers, and only occasional supervision.

(Tr. 25–31). Fourth, ALJ Jackson found Claimant could not perform any past relevant work. (Tr. 31–32). Lastly, ALJ Jackson found, despite the RFC restrictions, there are still a significant number of jobs Claimant could perform. (Tr. 32–33). Due to these findings, ALJ Jackson deemed Claimant not disabled. (Tr. 33).

Claimant administratively appealed ALJ Jackson's decision. (Tr. 348–50). The Appeals Council declined review, finding Claimant's reasons for disagreement did not provide a basis for changing ALJ Price's decision. (Tr. 5). At that point, ALJ Jackson's denial become the final decision of the Commissioner, and Claimant appealed to this Court. (DN 1).

## II. Standard of Review

When reviewing an administrative law judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted). Instead, the Court's review of the administrative law judge's decision is limited to an inquiry as to whether the administrative law judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (internal citations omitted), and whether the administrative law judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified

3

"whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

### III. Conclusions of Law

Claimant raises three challenges for review. First, Claimant contends ALJ Jackson improperly evaluated her fibromyalgia by failing to compare her symptoms to the listing for inflammatory arthritis. (DN 13, at PageID # 1193–94). Next, Claimant argues ALJ Jackson erred by assigning insufficient weight to Dr. Christie Kincaid's medical opinion. (*Id.*, at Page ID # 1193). Lastly, Claimant argues ALJ Jackson did not adequately explain how obesity factored into her residual functional capacity determination. (*Id.*, at PageID # 1194).

Issue 1: Did ALJ Jackson properly assess Claimant's fibromyalgia?

Claimant contends ALJ Jackson did not follow Social Security Ruling 12-2p in assessing her fibromyalgia. (DN 13, at PageID # 1193–94). Specifically, Claimant states ALJ Jackson's failure to consider her impairment in relation to the listing for inflammatory arthritis conflicts with SSR 12-2p and amounts to reversible error. (DN 14, at PageID # 1215). The Commissioner maintains that ALJ Jackson fulfilled the demands of SSR 12-2p. (DN 20, at PageID # 1247).

SSR 12-2p guides ALJs' evaluation of fibromyalgia, which the regulations do not classify as a listed impairment. 2012 WL 3104869, at *6. Therefore, at Step 3, ALJs must "determine whether [fibromyalgia] medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment." *Id.* To determine if fibromyalgia medically equals a listing, ALJs should "consider a longitudinal record whenever possible because the symptoms of fibromyalgia can wax and wane so that a person may have bad days and good days." *Id.* (internal

4

quotations omitted).

Importantly, because "there are so many potential [l]istings, the regulations do not require an ALJ to address every [l]isting in his or her findings." *Rebecca W. v. Comm'r of Soc. Sec.*, 3:21-cv-0449-RGJ, 2022 WL 4074604, at *8 (W.D. Ky. Aug. 10, 2022) (citing *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013)). However, when the record raises a "substantial question" about a particular listing, failing to address that listing constitutes reversible error. *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014). To raise a "substantial question" about satisfying a listing, "the Claimant must point to specific evidence that demonstrates [s]he reasonably could meet or equal every requirement of the listing." *Id.* Should the Claimant fail to point to a specific listing, "the ALJ does not commit reversible error by failing to evaluate [it]." *Id.* at 433. Put simply, "to support her argument that the ALJ erred in failing to discuss a particular [l]isting, the claimant [must] supply the numbered [l]isting and cite to evidence that she could meet or equal all of the [l]isting's requirements." *Rebecca W.*, 2022 WL 4074604, at *4.

ALJ Jackson found Claimant's fibromyalgia was a medically determinable impairment but then concluded that "when considered individually or in combination, the claimant's impairments do not meet or equal the level of severity set forth in any of the listings." (Tr. 23). In her decision, ALJ Jackson specifically considered listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)), 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), and 1.18 (abnormality of a major joint(s) in any extremity). (*Id.*). The decision also states that Claimant "[had] not allege[d] she had an impairment of listing level severity, nor ha[d] she submitted sufficient medical evidence to support such a finding." (*Id.*).

5

Although ALJ Jackson referenced other specific listings, Claimant argues ALJ Jackson erred by not analyzing her fibromyalgia under listing 14.09D (inflammatory arthritis). (DN 14, at Page ID # 1213–15). However, nothing required ALJ Jackson to analyze that specific listing. SSR 12-2p merely offers listing 14.09D to ALJs as a potential example for comparison; it does not mandate ALJs to always examine listing 14.09D when assessing fibromyalgia. *See* 2012 WL 3104869, at *6.

Still, Claimant alleges that her impairment meets or equals every requirement of listing 14.09D. (DN 14, at PageID # 1214). This listing requires the following:

> Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
> 1. Limitation of activities of daily living.
> 2. Limitation in maintaining social functioning.
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 14.09D. However, Claimant's brief fails to show how her fibromyalgia equals every criterion in listing 14.09D. She only alleges that her recurring fibro flares leave her "unable to complete activities of daily living and spends all day in bed," and she "continues to complain of pain and fatigue." (DN 14, at PageID # 1214). The listing requires matching two constitutional symptoms, and Claimant's brief can only possibly fulfill one: severe fatigue. She does not assert her symptoms include the remaining constitutional symptoms under the listing: fever, malaise, or involuntary weight loss. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 14.09D. Thus, Claimant fails to mount a meritorious claim that ALJ Jackson should have considered the inflammatory arthritis listing, and ALJ Jackson did not commit reversible error by not discussing listing 14.09D and only mentioning listings 1.15, 1.16, and 1.18.

6

Claimant additionally takes issue with ALJ Jackson's treatment of fibromyalgia in the RFC. (DN 14, at PageID # 1214). ALJ Jackson noted in her decision that "medical evidence d[id] not fully support the claimant's allegations of limitations due to fibromyalgia[.]" (Tr. 26). She further remarked that Claimant's exams showed normal ranges of motion without pain, and her "symptoms improved with treatment and medication," conflicting with subjective reports cited by Claimant. (Tr. 26–27). Still, ALJ Jackson concluded the records, in their totality, warranted some physical RFC limitations, such as limits on the weight Claimant can lift or carry. (Tr. 25).

ALJ Jackson relied on the treatment of Claimant's fibromyalgia and other objective medical evidence in crafting the RFC. (Tr. 23–25). Claimant fails to show the necessity of additional limitations due to her fibromyalgia; she also does not explain the inadequacy of the current limitations. Therefore, the Court finds no error in ALJ Jackson's treatment of Claimant's fibromyalgia in her RFC determination.

Issue 2: Did ALJ Jackson properly evaluate Dr. Kincaid's opinion?

Claimant next argues ALJ Jackson failed to adequately explain her analysis of the medical opinion of consultive mental examiner, Dr. Christie Kincaid. (DN 13, at PageID # 1193). Claimant highlights that ALJ Jackson found Dr. Kincaid's opinion unpersuasive, while also finding Dr. Ollie Dennis' opinion persuasive, despite both doctors conducting the same tests in the same manner. (*Id.*). Claimant also alleges ALJ Jackson improperly "imposed her own lay opinion regarding the manner of treatment [Claimant] should have received." (*Id.*). In response, the Commissioner argues that ALJ Jackson's decision followed the appropriate regulations in rendering Dr. Kincaid's opinion unpersuasive. (Tr. 14).

An ALJ bases their RFC determination on "all of the relevant medical and other evidence"

7

in the case record, including an analysis of the persuasiveness of the medical opinions in the record. 20 C.F.R. §§ 404.1545(a)(3), 404.1520c. An ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a) (2017). The administrative law judge need only explain how she considered the supportability and consistency factors, which are the two most important in determining the persuasiveness of a medical source's opinion or a prior administrative medical finding. § 404.1520c(b)(2). The supportability factor requires an *internal* analysis of the objective medical evidence and the supporting explanations from the source itself, while the consistency factor demands an *external* analysis of the opinion in comparison to evidence from other sources. §§ 404.1520c(b)(1)–(2). Ultimately, the more relevant the objective medical evidence and supporting explanations presented, the more persuasive the medical opinion will be. § 404.1520c(c)(2). An ALJ need not address every piece of medical evidence individually for her decision to nonetheless be supported by substantial evidence. *Thacker v. Comm'r of Soc. Sec.*, 99 Fed. App'x 661, 665 (6th Cir. 2004). The administrative law judge may, but is not required to, explain how she considered the other remaining factors in paragraphs (c)(3) through (c)(5) when articulating how she considered medical opinions. 20 C.F.R. § 404.1520c(b)(2)–(3).

After considering the entire record, ALJ Jackson found Dr. Kincaid's opinion "not supported by the provider's own findings" and "not consistent with the claimant's longitudinal medical file." (Tr. 30). Put differently, ALJ Jackson concluded Dr. Kincaid's medical opinion was neither based on adequate facts from her own examination nor aligned with outside medical evidence elsewhere in the record. As to supportability, ALJ Jackson explains the medical opinion

was "to some extent" based on Claimant's subjective reports and complaints. (Tr. 30). Claimant responded well to Dr. Kincaid's tests, leading to a finding that her "delayed recall," "remote memory," "capacity to calculate," and "capacity for abstract reasonings" were all "intact." (Tr. 608–09). The testing, however, also showed Claimant's "recent memory was impaired." (Tr. 608). The opinion then recited Claimant's own description of her symptoms, which Dr. Kincaid noted were "consistent with depression and anxiety." (Tr. 609). ALJ Jackson took issue with Dr. Kincaid's recommendations not being the product of performed objective medical tests but instead the result of Claimant's own subjective reports. (Tr. 30).

ALJ Jackson also found Dr. Kincaid's opinion inconsistent Claimant's entire medical file. (*Id.*). While Dr. Kincaid found Claimant's mental health symptoms caused "marked" impairments with social interactions and responding to the pressures of day-to-day work activities, ALJ Jackson noted there lacked evidence of "intense mental health treatment, crisis stabilizations or psychiatric commitments." (Tr. 30, 610). Further, ALJ Jackson noted Claimant's function reports and progress notes show she has "retained [her] ability to drive, prepare meals, pay bills, count change, handle a savings account, launder clothes, use a checkbook, shop by computer, text, and provide care for her infant grandson." (Tr. 30; *see* Tr. 271–85, 299–309, 475–487). By explaining both the supportability and consistency issues in Dr. Kincaid's opinion, ALJ Jackson's decision complied with the regulations.

Claimant additionally argues that Jackson did not adequately explain why she treated Dr. Kincaid's opinion different from Dr. Dennis's opinion. (DN 14, at PageID # 1211). Specifically, she says ALJ Jackson inserted her own "lay opinion" into her decision when she found Dr. Dennis's opinion persuasive and Dr. Kincaid's opinion unpersuasive, despite them both

conducting the same testing. (*Id.*, at PageID # 1210). But giving differing weight to opposing medical opinions "is clearly not a basis for . . . setting aside the ALJ's factual findings." *Mullins v. Sec'y of Health & Hum. Servs.*, 836 F.2d 980, 984 (6th Cir. 1987). Even still, ALJ Jackson justified her differing assessments of the opposing medical opinions, noting that Dr. Kincaid's opinion had both consistency and supportability problems, while Dr. Dennis's more moderate opinion was "supported with his own objective exam findings" and "consistent with the subsequent DDS opinions." (Tr. 30).

ALJ Jackson adequately explained her evaluation of Dr. Kincaid's opinion. She found it unpersuasive because it was not based on objective medical testing and did not align with other evidence in Claimant's record. While evidence may exist that would support a different finding, ALJ Jackson's determination was supported by substantial evidence in the record and the undersigned does not recommend relief on this ground.

Issue 3: Did ALJ Jackson properly address how obesity factored into Claimant's RFC?

Claimant lastly contests ALJ Jackson's treatment of her obesity in crafting the RFC. (DN 13, at PageID # 1194). Specifically, Claimant argues ALJ Jackson only mentioned her obesity in passing and failed to consider it in determining her RFC. (DN 14, at PageID 1216). In response, the Commissioner states that Claimant fails to identify evidence from the record to show her obesity caused limitations beyond what ALJ Jackson included in the RFC. (DN 20, at PageID # 1250).

Social Security Ruling 19-2p directs ALJs to consider the limiting effects of obesity on "routine movement and necessary physical activity within the work environment" when assessing a person's RFC. 2019 WL 2374244, at *4. The regulations do not mandate a particular mode of analysis for such consideration. *See Parr v. Comm'r of Soc. Sec.*, No. 2:20-CV-13173, 2021 WL

5986920, at *14 (E.D. Mich. Aug. 31, 2021) (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 411-12 (6th Cir. 2006)). Nor does SSR 19-2 relieve a claimant's burden of marshaling objective medical evidence and medical opinions establishing work-related limitations related to obesity. *See, e.g., Smith v. Astrue*, 639 F. Supp. 2d 836, 846-47 (W.D. Mich. 2009). Thus, it remains Claimant's burden to show specifically how her obesity, in combination with other impairments, limited her abilities beyond the ALJ's RFC determination. *Id.*

Claimant's independent assessment of the record does not demonstrate ALJ Jackson's decision was contrary to the weight of the evidence. First, ALJ Jackson acknowledged Claimant's obesity, but stated that the medical evidence did not support that obesity caused her functional limitations. (Tr. 26). ALJ Jackson noted that a December 2019 exam, occurring only two months after Claimant's alleged onset date of symptoms preventing her from working, revealed Claimant had full "musculoskeletal strength, normal ranges of motion, intact cranial nerves and no motor deficits." (Tr. 26; *see* 461–70). She further noted that numerous subsequent physical exams resulted in similar findings. (Tr. 26–27; *see* Tr. 1000, 1023–25, 1046, 1055).

Further, although ALJ Jackson recognized Claimant's obesity (Tr. 26), the regulations do not list obesity as an impairment nor do they require RFCs to account for obesity-related impairments. 2019 WL 2374244, at *4. Even still, ALJ Jackson's RFC addresses Claimant's obesity by limiting the amount of time she may sit, stand, walk, crouch, kneel, crawl, and climb ramps and stairs. (Tr. 25). It further directs that she must avoid ladders, ropes, and scaffolds. (Tr. 25).

Claimant fails to show obesity's limiting effect on her, only stating "[a]t no time did the ALJ specifically address [Claimant's] obesity and what, if any, limitations related to obesity were

included in the RFC." (DN 14, at PageID # 1216).

## IV. Recommendation

For the above-stated reasons, the Court finds substantial evidence supports ALJ Jackson's opinion. **IT IS THEREFORE RECOMMENDED** the final decision of the Commissioner be affirmed.

## NOTICE

Therefore, under the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.), *aff'd*, 474 U.S. 140 (1984).

Copies:         Counsel